OPINION JUDGMENT ENTRY
{¶ 1} Appellant Christina Villanueva appeals the grant of permanent custody of her four children by the Stark County Court of Common Pleas, Juvenile Division. The Appellee is the Stark County Department of Job and Family Services ("SCDJFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant is the mother of Blake Villanueva, Aaron Hampton, Cierenna Hampton, and Desmond Villanueva. On September 6, 2001, SCDJFS filed a complaint alleging that all four children, Aaron, Cierenna, Blake, and Desmond, were dependent, neglected, and/or abused. At the time, the children were primarily residing with appellant. At the shelter care hearing, the court concluded that the children should be returned to appellant. Subsequently, the children were adjudicated to be dependent, based on appellant's stipulation. At disposition, the children were placed under the protective supervision of SCDJFS.
 {¶ 3} On November 2, 2001, SCDJFS filed a post-dispositional motion seeking temporary custody with SCDJFS. Appellant stipulated to an order placing the children outside of her home pending an evidentiary hearing. Said hearing was conducted on December 11, 2001, at which time the trial court granted an order of temporary custody to SCDJFS.[1]
 {¶ 4} The matter came before the Citizen's Review Board on March 6, 2002. On June 24, 2002, SCDJFS filed a motion to extend temporary custody, which the court granted on October 8, 2002. The children commenced an extended visit with appellant on December 20, 2002. On January 29, 2003, SCDJFS filed a motion to return the children to appellant with protective supervision. The next day, however, a magistrate conducted a previously-scheduled annual review hearing, following which status quo was maintained. However, on April 7, 2003, SCDJFS formally amended its motion to return the children with protective supervision to a motion to extend temporary custody.
 {¶ 5} On August 4, 2003, SCDJFS filed a motion for permanent custody. Shortly thereafter, the court granted SCDJFS's aforesaid motion to extend temporary custody. The adjudication of the permanent custody motion took place on December 22, 2003. The best interests portions were heard on January 13, 2004 and February 10, 2004. On April 2, 2004, the court issued a judgment entry, with findings of fact and conclusions of law, granting permanent custody of all four children to SCDJFS.
 {¶ 6} Appellant filed a notice of appeal on April 26, 2004. She herein raises the following two Assignments of Error:
 {¶ 7} "I. The trial court erred in granting permanent custody of the children to the department of job and family services pursuant to R.C. 2151.414(B)(1)(d) because that statute is unconstitutional.
 {¶ 8} "II. The trial court's findings of fact are not supported by the evidence, and the granting of permanent custody was therefore an abuse of discretion."
 I. {¶ 9} In her First Assignment of Error, appellant challenges the constitutionality of R.C. 2151.414(B)(1)(d).
 {¶ 10} "The [permanent custody] statutes appropriately reflect the need to balance the extraordinarily significant rights and interests: parents' rights and interest in the custody, care, nurturing, and rearing of their own children, and the state's parens patriae interest in providing for the security and welfare of children under its jurisdiction * * *." In reThompson (April 26, 2001), Franklin App. Nos. 00AP-1358, 00AP-1359. Clearly, "* * * by enacting R.C. 2151.414(B)(1)(d), the legislature intends that the mere amount of time in which a child is in the continuous care of a public or private children services agency is sufficient to terminate a parent's right to raise her child and to award permanent custody to the requesting agency." In re Miqueal M, 6th Dist. No. L-02-1020, 2002-Ohio-3417, ¶ 17.
 {¶ 11} When examining legislative enactments, we must afford a strong presumption of constitutionality. Cincinnati v. Langan
(1994), 94 Ohio App.3d 22.
 {¶ 12} Several appellate districts in Ohio have addressed the constitutionality of the "12 of 22" rule in 2151.414(B)(1)(d). For example, in In re Workman, Vinton App. No. 02CA574, 2003-Ohio-2220, ¶ 40, the Fourth District Court of Appeals aptly noted that "[p]rior to instituting a permanent custody proceeding under R.C. 2151.414(B)(1)(d), the parent has twelve months to demonstrate that the parent is able, suitable, or fit to care for the child," and concluded that the statute was constitutional. See, also, In re Stillman (2003), 155 Ohio App.3d 333,2003-Ohio-6228; In re Brooks, Franklin App. Nos. 04AP-164, 04AP-202, 04AP-165, 04AP-201, 2004-Ohio-3887; In re Gomer,
Wyandot App. No. 16-03-19, 2004-Ohio-1723. We likewise conclude appellant herein has failed to rebut the presumption of constitutionality regarding R.C. 2151.414(B)(1)(d).
 {¶ 13} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 14} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C.2151.414(D). These factors are as follows:
 {¶ 15} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 20} In the case sub judice, the court heard testimony from Vicki Mitchell, the ongoing social worker initially assigned to the case, who documented the long history of abuse of the children by appellant. SCDJFS has documented abuse concerns regarding the children since 1993. Tr. at 52. For years, both in-agency and court-involved steps had been taken to attempt to deal with the persistent abuse problem. In 1996, the court temporarily removed the children from appellant due to abuse concerns. At various times after 1996, SCDJFS became involved on a non-court basis. Eventually, the children were again removed in 2001. At the commencement of the proceedings leading to the present appeal, Mitchell noted that despite this repeated involvement, and despite appellant's completion of various services, the children continued to be beaten by appellant, in some instances to the point of bruising. Tr. at 37, 52. According to Mitchell, the children repeatedly expressed fear of appellant, even though they did ask to see her. Id.
 {¶ 21} The court also heard the testimony of Donald Kissinger, therapist for Desmond, Aaron, and Cierenna. He acknowledged that the children had a bond with appellant, although he was suspicious of the strength of that bond, given the lengthy history of physical abuse. Tr. at 93-94. Furthermore, weighing the factors he saw, Kissinger expressed the opinion that the children should not be returned to appellant. Tr. at 94.
 {¶ 22} In addition to the witnesses analyzed above, the trial court had before it the guardian ad-litem's report and testimony. The guardian ad litem's conclusion was that permanent custody would be in the best interests of all four children. The guardian noted that even during an extended visit in March 2003, Desmond was discovered with a nose bleed and bruising. The GAL expressed that she was concerned over "how many chances does a parent get at the expense of their children * * *." Tr. at 217.
 {¶ 23} Appellant first alleges that the trial court failed to consider statutory factors regarding best interests of the children. Nonetheless, "R.C. 2151.414(D) requires the court `consider all relevant factors' as set forth in this subsection. * * * The statute does not require the court to list those factors or conditions it found applicable before making its determination that the child cannot be placed with either parent or that the permanent custody is in that child's best interest."In re I.M. Cuyahoga App. Nos. 82669, 82695, 2003-Ohio-7069, ¶ 27. See, also, R.C. 2151.353(A)(4). Furthermore, "[a] trial court judge is presumed to know the applicable law and apply it accordingly." Walczak v. Walczak, Stark App. No. 2003CA00298, 2004-Ohio-3370, ¶ 22, quoting State v. Eley (1996),77 Ohio St.3d 174, 180-181. Appellant is correct in noting that the trial court's findings and conclusions do not mention the testimony of most of appellant's witnesses, including two of appellant's counselors, the children's prior counselor, and two persons from the FACES group who observed a number of visits between appellant and the children. However, we are unpersuaded that these omissions in the findings equate with a failure by the court to consider the statutory "best interest" factors.
 {¶ 24} Appellant further argues that the trial court's duty to consider "all relevant factors" in making a best interest determination (R.C. 2151.414(D)) requires a consideration of parental compliance with the case plan. Appellant contends the court, during the "best interest" phase of the proceedings, consistently limited or excluded testimony concerning her case plan progress. Appellant alleges that she was thereby denied the opportunity to show her maintenance of housing, her steady employment, her provision of medical care to the children, her compliance with counseling and parenting classes, and other facets of her relationships with the children during the case. However, as the following section of transcript reveals, the court permitted appellant's attorney, during the cross-examination of social worker Krishina Bates, to place on the record appellant's overall compliance with the case plan:
 {¶ 25} "Q. During the time that you have been on the case, what was mother required to do as far as case plan services?
 {¶ 26} "BY MR. MUTH: Objection.
 {¶ 27} "BY THE COURT: Sustained. I'll allow a question, what has she not completed or completed.
 {¶ 28} "Q. Is there anything that mother was required to do on her case plan that she has not completed, to your knowledge?
 {¶ 29} "A. Anger management.
 {¶ 30} "Q. And where was that requirement — was that not something that she was to be addressing in the counseling that she was attending?
 {¶ 31} "A. Yes, but when I talked to Sarah she said that they really haven't been working on it, they had been working on issue (sic) with her living her life without the children in the home.
 {¶ 32} "Q. Do you know whether anger management was addressed to any extent either with Donald Remmy or Paul Kime?
 {¶ 33} "A. I believe they had a couple of sessions but they, from my understanding it was never really addressed.
 {¶ 34} "Q. Have you made any changes in the case plan to try to add any additional anger management services?
 {¶ 35} "A. No.
 {¶ 36} "Q. So, to your knowledge, mother continues in counseling and other than that, all the requirements of the case plan have been completed?
 {¶ 37} "A. Except the anger management portion, which was ordered in July.
 {¶ 38} "Q. Of which year?
 {¶ 39} "A. Of 2003, I'm sorry.
 {¶ 40} "Q. It was ordered in July of 2003?
 {¶ 41} "A. It was on the judgment entry for July, 2003." Tr. at 77-78.
 {¶ 42} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279, 376 N.E.2d 578. Moreover, in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. In re RossantelliChildren, Delaware App. No. 01CAF12072, 2002-Ohio-2525, citingThompson v. Thompson (1987), 31 Ohio App.3d 254, 258,511 N.E.2d 412, and Trickey v. Trickey (1952), 158 Ohio St. 9, 13,106 N.E.2d 772.
 {¶ 43} Upon review, we conclude the trial court's conclusions concerning best interests and the resultant grant of permanent custody to SCDJFS were supported by the evidence and did not constitute an abuse of discretion. As with many cases where permanent custody is at issue, there was conflicting evidence as to when appellant would be competent to safely raise her children, but here the trial court determined in its discretion that the case had reached the limits of how long these four children would have to wait for this to develop.
 {¶ 44} Appellant's Second Assignment of Error is therefore overruled.
 {¶ 45} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
Wise, J. Gwin, P.J., and Farmer, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.
Costs to appellant.
[1] The children have not been returned to legal parental custody since the filing of the temporary custody order on December 14, 2001.